**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**DANIEL W.,**

**Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

**Case No. 1:25-cv-00471**

**OPINION AND ORDER**

**OPINION AND ORDER**

This case is before the Court to consider a final decision of the Commissioner of Social Security which denied Plaintiff's application for supplemental security income. That final decision was issued by the Appeals Council on April 16, 2025. After filing the complaint in this case, Plaintiff moved for judgment on the pleadings (Doc. 5) and the Commissioner filed a similar motion (Doc. 8). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant.

## I. BACKGROUND

Plaintiff protectively applied for supplemental security income on December 29, 2021, alleging that he became disabled on August 1, 2012. After initial administrative denials of his claim, Plaintiff participated in a hearing before an Administrative Law Judge on April 4, 2024. Both Plaintiff and a vocational expert, Christine Spaulding, testified at the hearing.

On June 4, 2024, the ALJ issued an unfavorable decision. The ALJ found, first, that Plaintiff had not engaged in substantial gainful activity since his application date. Next, the ALJ determined that Plaintiff suffered from severe impairments including post-traumatic stress disorder, borderline intellectual functioning, attention deficit hyperactivity disorder, major depressive disorder, and adjustment disorder. He further found that none of these impairments, considered singly or in combination, met the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had the ability to perform a full range of work at all exertional levels. However, he was limited to work involving simple, routine, repetitive tasks done in a low-stress environment that did not involve more than occasional decision-making or occasional changes to the work setting.

Additionally, he could not do production or pace work, could interact occasionally with coworkers and supervisors, and could not interact at all with the general public.

Plaintiff had no past relevant work. Given these nonexertional limitations, the ALJ determined that Plaintiff could do unskilled medium jobs such as hand packer, diswasher, and price marker. As a result, he found that Plaintiff was not under a disability as defined in the Social Security Act.

In his motion for judgment on the pleadings, Plaintiff raises these issues, stated *verbatim* as follows:

1. The ALJ improperly rejected LMHC Hutton's disabling opinion.

2. The ALJ failed to explain the different interaction levels and what evidence these limitations were based on.

Plaintiff's memorandum, Doc. 5 -1, at 1.

## II. THE KEY EVIDENCE

### A. Hearing Testimony

Plaintiff, who was 29 years old at the time of the first administrative hearing, first testified that his primary issue was the inability to pay attention. He also said that he possibly suffered from autism and that he was able to perform only tasks that he enjoyed, like cooking. His attention span was limited to 20 to 30 minutes. Plaintiff said that he could go to the store by himself but needed a list in order to remember what to buy.

Another issue Plaintiff identified was his memory. He also said that the last work he had done was volunteering at his mother's place of work. Plaintiff further testified to difficulty sleeping. On a typical day, he read and got exercise by walking outside or going to the store. Large crowds did make him nervous. As far as treatment was concerned, he was seeing a therapist several times per month and had been doing so for several years.

The vocational expert, Ms. Spaulding, was asked to assume that Plaintiff had no past relevant work. She was then asked questions about a person with Plaintiff's vocational profile who had various nonexertional limitations involving a restriction to low-stress work without fast pace, only occasional changes to the workplace, and limited interaction with others, including no interaction with the public. In response, she identified jobs such as hand packer, dishwasher, and price marker which such a person could do, and she gave numbers for those jobs as they existed in the national economy. A person doing such work could only be off-task for ten percent of the time, however, and someone who had to take time off work once a week to deal with personal hygiene issues also could not be employed. The same would be true for someone who needed

reminders every 15 minutes.

### B. Medical and Educational Evidence

The first record in the file is a document from the Buffalo Public Schools generated when Plaintiff was in high school. At that time, he was classified as having an emotional disability and was in special education classes. It appeared that he had difficulty relating to his peers, but with guidance he was seen as capable of academic achievement. His hygiene was noted as a frequent concern. There is also a note from a new patient examination in 2022 indicating that Plaintiff had no health concerns at that time.

The record also contains a large volume of counseling notes spanning several years. Plaintiff initially sought counseling in 2022 in an effort to deal with his father's death and because his memory and attention had gotten worse. He reported that therapy was helpful but he still struggled with anxiety and grief. The notes do not have a significant amount of narrative detail.

### C. Opinion Evidence

Dr. Ippolito conducted a consultative psychiatric evaluation on July 1, 2022. She noted that Plaintiff had been diagnosed with ADHD in the past but was not currently on medication. Plaintiff reported symptoms of depression and anxiety as well as bowel problems, and he had difficulty staying on topic during the evaluation. Dr. Ippolito observed that his attention and concentration was impaired due to difficulty with math skills and his memory was impaired due to distractability and anxiety. Plaintiff said that he could perform activities of daily living without assistance and that he spent his days reading and watching videos. Dr. Ippolito concluded that he could do simple work without limitations, but had a moderate limitation in his ability to relate to others and to perform at a consistent pace. (Tr. 367-70).

Plaintiff's counselor, Ms. Hutton, completed a mental medical source statement in 2024 indicating that she had been seeing him for two years and that his diagnoses included PTSD and borderline intellectual functioning. She identified problems with maintaining focus and with memory and concentration and did not believe he could perform any of the mental demands of regular work. She also said he would be off task for 30% of the time or more and that his borderline intellectual functioning would increase stress if he were exposed to a new environment. (Tr. 408-12).

The state agency reviewers' opinion as to Plaintiff's mental functional capacity is as follows. Dr. May concluded that there was no evidence of a severe mental impairment. That determination was affirmed by Dr. Dekeon.

## III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV. DISCUSSION

### A. Evaluation of Opinion Evidence

As his first claim of error, Plaintiff argues that the ALJ erred in his evaluation of the opinions expressed by Plaintiff's counselor, Ms. Hutton. More specifically, he contends that the ALJ did not adequately explain his conclusion that these opinions were inconsistent with the record and did not cite to any portions of the record demonstrating that inconsistency. The Commissioner responds that the ALJ's decision is supported by substantial evidence in the record, including three other expert opinions, and that Plaintiff is simply seeking to do an end run around the substantial evidence standard.

It is helpful to begin the analysis of this issue with a review of what the ALJ actually said in his decision. When making his residual functional capacity determination, the ALJ first concluded that Plaintiff's testimony concerning disabling symptoms was not entirely consistent with the record. He noted that Plaintiff was able to function in the school setting when dealing with subjects that interested him and that he was also able to do tasks like yard work, laundry, fixing simple meals, shopping, and managing money. Additionally, his treatment was infrequent

and he did not take any medication or seek any urgent care. After summarizing the expert opinions, the ALJ determined that Dr. Ippolito's views were somewhat persuasive, but he rejected Ms. Hutton's opinions, reasoning that

> On May 18, 2024, Alicia Hutton, LMHC-P, submitted a medical opinion form to the file in which she opined that the claimant had extreme limitations in every functional category, that the claimant would be off-task thirty percent or more during a regular workday. Ms. Hutton supports her opinion by noting the claimant's borderline intellectual functioning, noting fair progress with therapy, the claimant's symptoms of memory problems and difficulty with comprehension, distractibility, emotional withdrawal, and behavioral abnormalities. (Ex. B13F/15-19). Ms. Hutton's opinion appears to conflict with the evidence of record. The claimant's psychotherapy notes reflect difficulty with stressors and some complaints about focus or concentration. But the record does not demonstrate the kind of functional difficulties consistent with marked or extreme limitations. (Ex. B1F/2, 3; Ex. B4F; Ex. B5F; Ex. B12F/4; Ex. B13F/31-51, 66, 75-80, 101, 102, 105, 113, 125). Therefore, I find Ms. Hutton's opinion unpersuasive.

(Tr. 22-23).

The issue raised by Plaintiff's argument is the extent to which an ALJ must articulate the rationale used to discount an expert medical opinion on grounds that it is inconsistent with the evidence. As this Court has explained,

> [u]nder the [applicable] regulations, an ALJ's failure to adequately explain how he or she considered the supportability and consistency of a medical opinion in the record is procedural error. *Loucks [v. Kijakazi]*, 2022 WL 2189293 [(2d Cir. June 17, 2022)] at *2. However, even if the ALJ commits such an error, the reviewing court may affirm if "a searching review of the record assures us 'that the substance of the [regulation] was not traversed.' " *Loucks*, 2022 WL 2189293 at *2 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)).

*Sarah M.K. v. Comm'r of Social Security*, 2022 WL 4232880 (W.D.N.Y. Sept. 14, 2022).

Here, it is not at all clear that the ALJ committed the procedural error which Plaintiff relies on. In addition to referring specifically to the psychotherapy notes, which appear to form the basis for Ms. Hutton's opinion, the ALJ identifies pages from five different exhibits to support his analysis. He also compared Ms. Hutton's opinion to those expressed by Dr. Ippolito and the two state agency reviewers and explained why he found them to be more in keeping with the evidence of record (although the latter two opinions were deemed to be only somewhat persuasive because they did not account for the fact that Plaintiff struggled to cope with stress). Earlier in his decision, the ALJ also noted that Plaintiff was not taking any medication to address

his symptoms and that he was functioning in the low average range of intelligence, at least according to Dr. Ippolito. He also pointed out that Plaintiff was able to engage in many activities of daily living without interference from psychological symptoms. Those citations to the record are accurate, and Plaintiff has not made the argument that the ALJ's decision lacks substantial support. Under all of these circumstances, the Court finds this first claim of error to lack merit.

**B. Levels of Interaction**

As his second claim of error, Plaintiff asserts that the ALJ did not properly articulate the factors underlying his determination that Plaintiff could interact occasionally with coworkers and supervisors but not at all with the general public. He notes that none of the expert opinions made this distinction - Dr. Ippolito believed that moderate limitations in functioning existed with respect to all of these categories, and Ms. Hutton expressed no opinion at all on the issue - and argues that the ALJ needed, but failed to, identify the evidence that supported making a distinction between others in the workplace and the general public. The Commissioner, however, asserts that it is not error (or, if it is error, it is harmless) for an ALJ to impose a restriction that is more favorable to a claimant than any of the experts have identified. The Commissioner also points out that the record as a whole supports such a distinction because it contains evidence that Plaintiff did have issues with members of the public while in school and that Plaintiff did not regularly interact with the public when performing his activities of daily living.

This Court has recently addressed this exact issue, and it has rejected the argument which Plaintiff advances here. In *Nathan S. v. Comm'r of Soc. Sec.*, 2026 WL 2858414, *4 (W.D.N.Y. Sept. 23, 2026), the Court considered a case where the ALJ found the claimant to be more limited in his ability to deal with the general public than with others in the workplace, very similar to the finding made here. As here, in *Nathan S.*, there was no specific expert opinion supporting that finding. Also, as in this case, the claimant's testimony indicated that he experienced some difficulty being around people in a public setting. Citing to other decisions from this Court, including *Jiminez v. Colvin*, 2018 WL 459301, at *3 (W.D.N.Y. Jan. 18, 2018), and *Kristin H. v. Comm'r of Soc. Sec.*, 2025 WL 461452, *5 (W.D.N.Y. Feb. 11, 2025), the Court concluded that any error, if one was committed, was harmless and that no remand was required. The Court makes the same determination here, and the second claim of error does not provide a basis for remand.

**V. CONCLUSION AND ORDER**

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 5), **GRANTS** the Commissioner's motion (Doc. 8), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security Commissioner.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**